UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:17-cv-24032-Scola/Torres

**PATRICIA SUSANA CHAHIN DONADO**
and all others similarly situated under 29
U.S.C. 216(b),

    Plaintiff,

v.

**MRC EXPRESS, INC.,**

    Defendant.

---

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

---

Defendant, MRC EXPRESS, INC. ("MRC"), by and through undersigned counsel, files its Reply Memorandum in support of Dismissal of Plaintiff's Complaint, and would respectfully show the Court as follows:

**Arbitrator Determines Arbitrability/Delegation Clause**

The determination of the enforceability of the Arbitration Clause in the PTA must be made via arbitration pursuant to the express terms of the contract. In relevant part, the contract provides at section 11(d): "any and all disputes arising under or relating to the interpretation or application of this Agreement... shall be subject to final and binding arbitration and not by way of court or jury trial." See Exhibit "A" to the Motion to Dismiss [DE 9-1]. This is known as a "Delegation Clause."

Plaintiff appears to be challenging the contract as a whole on a few spurious[1] bases, but Plaintiff fails to realize that a challenge to the validity of the contract must be decided

---

[1] Plaintiff's affidavit is improper for multiple reasons that will be presented via a separately filed Motion to Strike.

by arbitration. See Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 449 (2006) ("regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."). Buckeye was an appeal from the Florida Supreme Court, and was determined in accordance with Florida law, just as this matter. That opinion relied on the holdings in Southland Corp. v. Keating, 465 U.S. 1 (1984) and Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395 (1967) ("the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.").

Further guidance for this court was just recently provided in Bey v. XPO Logistics, Inc., 2017 WL 3923030 (M.D. Fla. Sept. 7, 2017), which involved a factually similar scenario, held as follows:

> Specifically, the Eleventh Circuit recognizes "three distinct types of challenges to a contract containing an arbitration clause": (1) challenges to the formation, or "the very existence," of the contract; (2) challenges "to the validity of the arbitration clause standing alone"; and (3) challenges "to the validity of the contract as a whole." Wiand v. Schneiderman, 778 F.3d 917, 924 (11th Cir. 2015). **Under a delegation provision "parties may agree to commit even [these] threshold determinations to an arbitrator**, such as whether an arbitration agreement is enforceable." Parnell v. CashCall, Inc., 804 F.3d 1142, 1146 (11th Cir. 2015).

Id. at *2. [emphasis added].

The Court in Bey held that there was no argument put forth by the Plaintiff specifically challenging the delegation clause, and thus, the court had no option but to order arbitration. In reaching that holding the court reasoned: "Where, as here, 'an arbitration agreement contains a delegation provision and the plaintiff raises a challenge

to the contract as a whole, the federal courts may not review his claim because it has been committed to the power of the arbitrator.'" Id. at *4.

## The Arbitration Agreement Covers All Claims

Section 12 of the contract provides a standard merger clause as follows:

> "The parties agree that this Agreement contains the entire understanding of the parties and all of the terms and conditions regulating their relationship to each other. It is distinctly understood and agreed that there are no representations, warranties, covenants or undertakings other than those expressly set forth herein.

See Exhibit "A" to the Motion to Dismiss [DE 9-1].

The sole case that Plaintiff has offered to support its position as to the contract not applying to the services performed by the Plaintiff, Thomas v. Carnival Corp., 573 F.3d 1113 (11th Cir. 2009), has been roundly rejected by more than a dozen cases since.[2] Moreover, it did not involve interpretation of the FAA, but instead the Convention on the Recognition and Enforcement of Foreign Arbitral Awards and claims of unseaworthiness, failure to cure, and the Jones Act.  For these reasons, the case provides no guidance and is entirely irrelevant to the issues before the Court.

Even if the Court were to consider Thomas, the issue in that case was that the arbitration provision specifically stated that it only applied after the date that it was executed, whereas the PTA states that it is the "entire agreement" that there are no other covenants, and that it shall include "any and all disputes arising under or related to ...

---

[2] Vera v. Cruise Ships Catering, 2014 WL 12478007, (S.D.Fl. 2014);  Williams v. NCL (Bahamas) Ltd., 686 F.3d 1169, (11th Cir. 2012); Lindo v. NCL (Bahamas), Ltd., 652 F.3d 1257 (11th Cir. 2011); Escobar v. Celebration Cruise Operator, Inc., 805 F.3d 1279 (11th Cir. 2015); Fernandes v. Carnival Corp., 484 Fed.Appx. 361 (11th Cir. 2012); Carter v. Doll House II, Inc., 608 Fed.Appx. 903 (11th Cir. 2015); etc.

services performed or work performed by Contractor... or relationship with Company." Most importantly, unlike in Thomas, the PTA does not set a temporal limit on the application of the arbitration provision. Also noteworthy are the types of claims brought in Thomas, which the court points out were related to a slip and fall and had no relation to the contract in question. Id., at 1118. Those were not wage or job related claims whatsoever.

Plaintiff also relies upon Carter v. Doll House II, Inc., 69 F. Supp. 3d 1351 (N.D. Ga. 2014), aff'd in part, vacated in part, remanded, 608 Fed. Appx. 903 (11th Cir. 2015)[3], but fails to include any analysis of that case for reasons that become obvious upon reviewing the opinions in that case. That case involved the Defendant presenting a contract of adhesion, executed by continuing to work, rather than by signature, to the Plaintiffs after the first Plaintiff had already filed suit. Obviously, such a scenario is plainly distinguishable. In addition, the prior contract's arbitration provision was enforced as written by the trial court.

Most importantly, the Eleventh Circuit on appeal pointed out that the contract in Carter v. Doll House II, "clearly refers 'only' to 'any dispute regarding this contract/agreement.'" 608 Fed. Appx. 903, 904 (11th Cir. 2015). The court quoted that specific language of the underlying contract. The cases upon which Carter rested specifically provide that the language of the contract itself controls. See Klay v. All Defendants, 389 F.3d 1191, 1203 (11th Cir. 2004) (involving an arbitration agreement with

---

[3]Plaintiff chose to reference this case with a slip copy citation, and failed to include the proper citation, or the opinion of the Eleventh Circuit on that case vacating in part the trial court's holding, which failure is unacceptable. In reading such opinions it becomes clear why Plaintiff might want others to take its word for what the case holds and how the Eleventh Circuit treated it on appeal.

a clear expiration date, which was plainly read to not cover disputes after said date); Belke v. Merrill Lynch, Pierce, Fenner & Smith, 693 F.2d 1023, 1028 (11th Cir. 1982), abrogated [entirely on other grounds] by Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213 (1985) ("An arbitration clause covering disputes arising out of the contract or business between the parties evinces a clear intent to cover more than just those matters set forth in the contract.").

The holding in Belke actually demonstrates that arbitration is required under the terms of the contract at issue here. The Court stated that because the contract required arbitration for "any controversy between us arising out of your business" and not just arising out of that particular contract, it must dismiss and compel arbitration. This holding from Belke is still recognized as good law in this District as well as the Eleventh Circuit. See Saldana v. Interior Concepts LLC, 14-CV-81383-CIV, 2015 WL 12860326, at *3 (S.D. Fla. Apr. 2, 2015), report and recommendation adopted, 9:14-CV-81383, 2015 WL 12860336 (S.D. Fla. Apr. 22, 2015) ("this Court finds that it is immaterial whether Plaintiff's FLSA claims arose before or after he signed the employment agreement; what is material is whether Plaintiff's claims in Count II relate to his employment with IC, which they clearly do."); Jones v. Waffle House, Inc., 866 F.3d 1257, 1271 (11th Cir. 2017) ("And while there was no arbitration agreement in place at the time Jones's FCRA claims arose, the agreement includes "past" claims and we have previously allowed the arbitration of claims that arose prior to the execution of an arbitration agreement."). [Both relying on Belke.] See also Day v. Persels & Associates, LLC, 8:10-CV-2463-T-TGW, 2015 WL 413224, at *10 (M.D. Fla. Jan. 30, 2015) ("The use of the disjunctive "or" following "this agreement" shows that the arbitration provision extends beyond disputes arising from the Client Agreement.").

Here, the PTA provides precisely the language required by Belke and its progeny. It reads in relevant part:

> any and all disputes arising under or relating to the interpretation or application of this Agreement, services or work performed by Contractor, Contractor's labor/subs, or Company, *or* concerning Contractor's or Contractor labor/subs' relationship with Company, shall be subject to final and binding arbitration and not by way of court or jury trail.

See Exhibit "A" to the Motion to Dismiss [DE 9-1].

The reference to any and all... services or work performed by Contract or Contractor's relationship with Company is precisely the type of language referenced from the contracts in Belke, Saldan, Jones, and Day, supra. Just as importantly according to those case and specifically Day, is the use of the disjunctive "or" to separate the list. That is "retroactive" language as held by the Eleventh Circuit and this District.

**Plaintiff's Arguments As to Class Action Waiver and "Public Policy" Fail**

The arguments made by Plaintiff as to "public policy" and right to collective action are so plainly contrary to established law. This was established in the motion to dismiss. See Walthour v. Chipio Windshield Repair, LLC, 745 F.3d 1326, 1329 (11th Cir. 2014) ("After examining the FLSA's text, legislative history, purposes, and these Supreme Court decisions, we discern no "contrary congressional command" that precludes the enforcement of plaintiffs' Arbitration Agreements and their collective action waivers."); Pendergast v. Sprint Nextel Corp., 691 F.3d 1224, 1234 (11th Cir.2012) ("We need not decide whether the class action waiver here is unconscionable under Florida law or if it frustrates the remedial purposes of the FDUTPA, because to the extent Florida law would invalidate the class action waiver, it would still be preempted by the FAA."); Gilmer v.

Interstate/Johnson Lane Corp., 500 U.S. 20, 32, 111 S.Ct. 1647, 1655, 114 L.Ed.2d 26 (1991) (even assuming that the enforcement of the arbitration agreement would result in the parties forgoing proceeding collectively, "the fact that the ADEA provides for the possibility of bringing a collective action does not mean that individual attempts at conciliation were intended to be barred."). As pointed out in Walthour:

> all of the circuits to address this issue have concluded that § 16(b) does not provide for a non-waivable, substantive right to bring a collective action. See Sutherland v. Ernst & Young LLP, 726 F.3d 290, 296–97 & n. 6 (2d Cir.2013) (determining that the FLSA does not contain a "contrary congressional command" that prevents an employee from waiving his or her ability to proceed collectively and that the FLSA collective action right is a waivable procedural mechanism); Owen, 702 F.3d at 1052–53 (determining that the FLSA did not set forth a "contrary congressional command" showing "that a right to engage in class actions overrides the mandate of the FAA in favor of arbitration"); Carter v. Countrywide Credit Indus., Inc., 362 F.3d 294, 298 (5th Cir.2004) (rejecting the plaintiffs' claim that their inability to proceed collectively deprived them of a substantive right to proceed under the FLSA because, in Gilmer, the Supreme Court rejected similar arguments regarding the ADEA); Adkins, 303 F.3d at 503 (determining that a plaintiff failed to point to any "suggestion in the text, legislative history, or purpose of the FLSA that Congress intended to confer a non-waivable right to a class action under that statute" and that the plaintiff's "inability to bring a class action, therefore, cannot by itself suffice to defeat the strong congressional preference for an arbitral forum"); cf. D.R. Horton, 737 F.3d at 362 (determining that the National Labor Relations Act does not contain a contrary congressional command overriding the application of the FAA).

Id. at 1336.

## Conclusion

Plaintiff's opposition memorandum fails to even raise one single reasonable basis upon which this court might conceivably deny Defendant's motion. The PTA is clear that it covers not just the performance of that Agreement itself, but any and all services

performed by Contractor to Company and any attempt to define or interpret the relationship between the parties. The PTA also contains a plain merger clause which would bar consideration of any other representations of the agreement between the parties pursuant to the parol evidence rule. See J. M. Montgomery Roofing Co. v. Fred Howland, Inc., 98 So. 2d 484, 485 (Fla. 1957) ( "the terms of a valid written contract or instrument cannot be varied by a verbal agreement or other extrinsic evidence where such agreement was made before or at the time of the instrument in question."). Finally, the PTA and the case law establish that the determination as to whether the PTA and its arbitration clause are enforceable must be referred to arbitration.

WHEREFORE, Defendant MRC EXPRESS, INC., respectfully requests that this Court enter an order dismissing Plaintiff's complaint as aforesaid, and order such other and further relief as it deems just and proper.

Respectfully submitted,

**Lawrence J. Roberts & Associates, P.A.**
Attorneys for Defendant
249 Catalonia Avenue
Coral Gables, Florida 33134
Phone: (305) 441-7882
Fax: (305) 441-7883
Email: Dsmith@lrobertsandassociates.com

By:     */s/ DAVID W. SMITH*
         DAVID W. SMITH, ESQUIRE
         Florida Bar No.: 89870

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on December 8, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

      Respectfully submitted,

**Lawrence J. Roberts & Associates, P.A.**
Attorneys for Defendant
249 Catalonia Avenue
Coral Gables, Florida 33134
Phone: (305) 441-7882
Fax: (305) 441-7883
Email: Dsmith@lrobertsandassociates.com

By:  */s/ DAVID W. SMITH*
      DAVID W. SMITH, ESQUIRE
      Florida Bar No.: 89870

## SERVICE LIST

**Notice will be electronically mailed to:**
J.H. Zidell, Esq.
Email: zabogado@aol.com
J.H. Zidell, P.A.
300 71 st Street, Suite 605
Miami Beach, Florida 33141
Tel:   (305) 865-6766
Fax:   (305) 865-7167

*Attorney For Plaintiff*